UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 1:10-cr-00203-JPH-MJD |
| THOMAS KIRSCHNER, | ) ) | -01 |
| Defendant. | ) ) | |

**ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE**

Thomas Kirschner, an inmate at FCI Milan, filed an emergency motion for compassionate release. Dkt. [63]. Mr. Kirschner suffers from underlying health conditions that increase his risk of severe illness from COVID-19. He has served most of his 124-month sentence and his scheduled release date—as determined by the BOP—is rapidly approaching. Releasing Mr. Kirschner from the BOP seven months before his scheduled release date does not present a danger to the public, nor would it undermine the goals of federal sentencing law as set forth in 18 U.S.C. § 3553(a). Due to existence of extraordinary and compelling reasons for compassionate release, the motion is **granted**.

**I. Background**

Mr. Kirschner pleaded guilty to one count of conspiracy to advertise child pornography, in violation of 18 U.S.C. §§ 2251(d)(1)(A) and (e), and one count of conspiracy to distribute child pornography, in violation of 18 U.S.C. §§ 2252(a)(2) and (b)(1). Dkt. 55. His criminal conduct is summarized in the Stipulated Factual Basis used for the change of plea and sentencing hearing, dkt. 53, and

1

recited in the United States' Response in Opposition to Mr. Kirschner's motion for compassionate release, dkt. 75.

Pursuant to the Plea Agreement, the Court sentenced Mr. Kirschner to 124 months' imprisonment at the Bureau of Prisons ("BOP") followed by supervised release for life. Dkt. 55, pp. 2-3. Mr. Kirschner has served 97 months of the sentence imposed and is scheduled to be released on February 17, 2021, after having served about 104 months of the 124-month sentence.

While incarcerated, Mr. Kirschner "has not received any incident reports and is not considered a management problem." Dkt. 73-4, p. 2. He has "completed numerous Release Preparation classes" including "the Electrical Apprenticeship Program (9500 hours)." *Id.* Mr. Kirschner "graduated from Jackson College on June 11, 2019, with an Associates of Applied Science in Business Administration and Associates in General Studies." *Id.* He is currently working toward a third associate degree in arts. *Id.* Upon his release, Mr. Kirschner plans to live with his sister in Wilmington, North Carolina. *Id.* Mr. Kirschner reports that the United States Probation Office has approved his sister's home and has approved his proposed move to North Carolina. Dkt. 73, p. 15.

At FCI Milan, 80 inmates have recovered from COVID-19, three inmates have died from it, and 13 inmates currently have COVID-19.[1] Of the 1,308 inmates at FCI Milan, 214 inmates have been tested for COVID-19.[2] According

---

[1] https://www.bop.gov/coronavirus/ (Last visited July 7, 2020).
[2] https://www.bop.gov/locations/institutions/mil/ (Last visited July 7, 2020).

to Mr. Kirschner, and undisputed by the government, at least four individuals were removed from the high-risk unit due to positive COVID-19 test results on June 22, 2020. Dkt. 77, p. 6.

Mr. Kirschner has chronic obstructive pulmonary disorder ("COPD"), hypertension and obesity. Dkt. 73-1. He reports rescue inhaler use of Albuterol approximately four times per week as a result of symptoms related to COPD. Dkt. 75-10, pp. 3, 30. According to the CDC, an individual with COPD is at an increased risk of "severe illness from COVID-19." The CDC has also advised that individuals with hypertension may be at an increased risk of severe illness from COVID-19.[3] The CDC does not differentiate between mild, moderate, or severe forms of these conditions, nor does it exclude from the at-risk group individuals whose conditions are managed with medication.

Cold weather can exacerbate COPD.[4] Dkt. 75, p. 23 n. 9. According to the Johns Hopkins study cited by the United States, "during the winter season, colder outdoor temperatures were associated with increased respiratory symptoms, increased rescue inhaler use and decreased lung function in former smokers with COPD." *Id.* This study supports "findings of larger epidemiological studies that demonstrate a higher rate of COPD exacerbations in winter months, suggesting that exacerbations may be triggered by cold temperatures." *Id.* From this, it is reasonable to infer that Mr. Kirschner's COPD symptoms may become

---

[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html.
[4] *See* dkt. 75, p. (citing https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5817981/).

3

more severe this fall and winter at FCI Milan due to Michigan's cold winter climate.

Mr. Kirschner filed a request for a reduction in sentence with the warden of FCI Milan. That request was denied, and more than 30 days have passed since the date of his request. There is no dispute that Mr. Kirschner has exhausted administrative remedies as required by 18 U.S.C. § 3582(c)(1)(A) and his motion is properly before the Court for resolution.

## II. Discussion

### A. Applicable Law

The general rule is that sentences imposed in federal criminal cases are final and may not be modified. 18 U.S.C. § 3582(c). Under one exception to this rule, a court may reduce a sentence upon finding there are "extraordinary and compelling reasons" that warrant a reduction. 18 U.S.C. § 3582(c)(1)(A)(i). Before the First Step Act, only the Director of the BOP could file a motion for compassionate release. Now, a defendant is also permitted to file such a motion after exhausting administrative remedies. *See* First Step Act of 2018, Pub. L.N. 115-391, 132 Stat. 5194, 5239 (2018). The amended version of the statute states:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the

> factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A)(i).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In response, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c). U.S.S.G. § 1B1.13.

Section 1B1.13 sets forth the following considerations. First, whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, whether the defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, consideration of the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

### III. Analysis

Mr. Kirschner argues that his underlying health conditions and increased risk of severe illness or death from COVID-19 create an "extraordinary and compelling reason" justifying compassionate release. Dkt. 73, pp. 10-13. He further argues that his early release would not create a danger to the community or be inconsistent with the sentencing factors in 18 U.S.C. § 3553. *Id.* at 13-15.

In response, the Government contends that Mr. Kirschner is not at an increased risk of serious illness or death because his conditions are being effectively managed by medications. Dkt. 75, pp. 28-34. While the Government does not contend that Mr. Kirschner's early release would present a danger to the community, it argues that his early release would be inconsistent with the goals of sentencing under 18 U.S.C. § 3553(a). *Id.* at 35-36.

### 1. Extraordinary and Compelling Reasons

The Court may grant Mr. Kirschner relief if it determines that "extraordinary and compelling reasons" warrant a reduction in his sentence. 18 U.S.C. § 3582(c)(1)(A). The Court concludes that Mr. Kirschner has shown that extraordinary and compelling reasons exist in this case. Mr. Kirschner suffers from at least one condition—COPD—identified by the CDC as creating increased risk of severe illness if he were to become infected with COVID-19. The Government argues that Mr. Kirschner does not fit the CDC's criteria for individuals at an increased risk of severe illness because his COPD and hypertension have been effectively managed through medication. But the CDC Guidelines make no such distinction: "People of any age with the following conditions **are at increased** risk of severe illness from COVID-19: COPD (chronic obstructive pulmonary disease). . . Obesity (body mass index [BMI] of 30 or higher)."[5]

---

[5] Centers for Disease Control and Prevention, *People Who Are at Higher Risk for Severe Illness* (last visited July 8, 2020), at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk. html

The Government further argues that Mr. Kirschner's obesity is not a risk factor because his BMI—which has ranged from 26.5 to 35.9—is under 40. Dkt. 75, p. 17; 24. But the CDC Guidelines define obesity for purposes of increased risk of severe illness from COVID-19 as BMI of 30 or higher and Mr. Kirschner recently had a BMI of 29.9.[6] Dkt. 75-10, p. 5. His risk of experiencing severe symptoms from COVID-19 is increased by the fact that he is on the cusp of having another condition (obesity) and is further exacerbated by hypertension.

Considering the unique facts presented in this case—Mr. Kirschner's combined underlying health conditions, the CDC guidelines regarding individuals at an increased risk of severe illness from COVID-19, the conditions at FCI Milan, that Mr. Kirschner has served the vast majority of his sentence, Mr. Kirschner's conduct while incarcerated, and that the BOP has scheduled him to be released in less than seven months—the Court finds that Mr. Kirschner has carried his burden of showing extraordinary and compelling reasons warranting a sentence reduction.

While the BOP appears to be vigilant in its efforts protect staff and prisoners from COVID-19, dkt. 75, pp. 18-22, at FCI Milan there have been approximately 100 confirmed cases in a prisoner population of approximately 1,300. As evidenced by recent infections among prisoners in the high-risk population, the risk of contracting COVID-19 in FCI Milan remains a daily threat,

---

[6] Mr. Kirschner's medical records indicate that on January 24, 2020, he was 73 inches tall and weighed 227 lbs. Dkt. 75-10, p. 5. The Court calculated Mr. Kirschner's BMI using the National Institute of Health's BMI calculator. *See* https://www.nhlbi.nih.gov/health/educational/losewt/BMI/bmicalc.htm.

7

and that is entirely out of Mr. Kirschner's control. If released, Mr. Kirschner can self-isolate and take other steps to minimize the risk of exposure to COVID-19 whereas in prison he cannot.

Next, the Court considers whether such reduction is consistent with applicable policy statements. Section 1B1.13 refers to a reduction "upon the motion of the Bureau of Prisons" and has not been updated since the First Step Act amended Section 3582(c)(1)(A) to permit a defendant to file a motion for compassionate release; the policy statement set forth in Section 1B1.13 is not directly applicable to a defendant's motion for compassionate release. *See United States v. Young*, 2020 WL 3605025, at *2 (C.D. Ill. July 2, 2020). Moreover, the text and structure of section 3582(c)(1) support the conclusion that the Court can determine whether extraordinary and compelling reasons other than those set forth in Section 1B1.13 cmt. n.1(A)-(C) warrant compassionate release. *See United States v. Cantu*, 423 F. Supp. 3d 345, 349-52 (S.D. Tex. June 17, 2019). The *Cantu* court reasoned, in part, that Congress can override existing policy statements by statute, *id.* at 350, n.7 (citing cases from the 3rd, 6th, 8th, 9th, and 11th Circuits), and determined that the First Step Act's amendments demonstrated that the existing policy statement no longer complied with the "congressional mandate that the policy statement must provide guidance on the *appropriate* use of sentence-modification provisions under Section 3582," *id.* at 350-51 (emphasis in original).

Nonetheless, like many other courts, the Court considers Section 1B1.13 for guidance in evaluating whether the facts here constitute extraordinary and

8

compelling reasons to modify the sentence under 18 U.S.C. § 3582(c)(1)(A). *See Young*, 2020 WL 3605025, at *2-3; *United States v. Rodriguez*, 2020 WL 1627331, at *4 (E.D. Penn. 2020) (quoting *United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019) (collecting cases)). *But see United States v. Lynn*, 2019 WL 3805349, at *2-4 (S.D. Ala. Aug. 13, 2019) (holding that Section 1B1.13 applies to the amended First Step Act, is binding on district courts and precludes district courts from independently assessing what counts as "extraordinary and compelling" under the catchall provision).

The Court next considers the other factors set forth in section 1B1.13.

### 2. Danger to any Other Person or the Community

The Sentencing Guidelines provide that compassionate release is appropriate only when the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). The Government does not argue that Mr. Kirschner's early release would present a danger to the safety of any person or the community, and the facts weigh in Mr. Kirschner's favor. Dkt. 73 at 14-15 (discussing lack of disciplinary history in prison, and education and rehabilitation efforts taken while in prison and arrangements to live with family upon release); dkt. 77 at 7 (same). Moreover, Mr. Kirschner was released on his own recognizance for more than 18 months while his criminal case was pending, *see* dkt. 7, and again while pending designation by the BOP after he was sentenced, *see* dkt. 52, with no violations or reported incidents. Finally, he will be monitored and subject to stringent terms of supervised release for the rest of his life. Considering these

9

facts along with the factors set forth in § 3142(g), the Court finds that Mr. Kirschner's release from prison seven months early would not present a danger to the public.

### 3. Section 3553(a) Factors

Finally, the Court considers the § 3553(a) factors, including whether they outweigh the "extraordinary and compelling reasons" warranting compassionate release, and whether compassionate release would undermine the goals of the original sentence. U.S.S.G. § 1B1.13; *United States v. Ebbers*, No. S402CR11443VEC, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 9, 2020).

Focusing on "the nature and circumstances of the offense" and the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," the Government argues that the § 3553(a) factors do not support early release. Dkt. 75, pp. 34-35. There is no dispute that the offense conduct was extremely serious, and the nature and circumstances of the crime were horrific. But releasing Mr. Kirschner seven months early after he has served most of his sentence does not diminish the severity of the sentence or send the wrong message.

Mr. Kirschner has spent most of the last decade in prison and will be under stringent terms of court supervision for the rest of his life. Moreover, as the Government notes, Mr. Kirschner's sentence of 124 months was below the 180-month statutory mandatory minimum as a result of his acceptance of responsibility and cooperation, and a binding plea agreement. Dkt. 75 at 35.

The Government agreed to a sentence of nearly five years below the applicable statutory mandatory minimum, so its argument that granting Mr. Kirschner's motion—which will have a net effect of a seven-month reduction to his sentence—will undermine the section 3553(a) factors does not persuade the Court that those factors outweigh the extraordinary and compelling reasons supporting compassionate release.

Therefore, the Court concludes that the applicable § 3553(a) factors support Mr. Kirschner's request for compassionate release from further incarceration, subject to the conditions of supervised release set forth in the Judgment for life with an additional condition relating to the potential need to quarantine.

### III. Conclusion

Pursuant to 18 U.S.C. § 3582(c), the Court finds that extraordinary and compelling reasons warrant a reduction of Mr. Kirschner's imprisonment, that Mr. Kirschner does not pose a danger to any other person or the community under the conditions of release, that the § 3553(a) factors support a reduction, and that his release from imprisonment is consistent with the Sentencing Commission's policy statements. Therefore, the Court **GRANTS** Mr. Kirschner's Motion for Compassionate Release, dkt. [63], **ORDERS** that Mr. Kirschner's sentence of imprisonment be reduced to time served **as of 5:00 p.m. July 16, 2020**, and further **ORDERS** the BOP to release Mr. Kirschner **by 5:00 p.m. July 16, 2020**. The terms of supervised release imposed in the Judgment of March

20, 2012, dkt. 55, pp. 3, 4, remain the same with the addition of the following condition:

Upon release, the defendant is further **ORDERED** to comply with any period of quarantine directed by medical staff and/or any state or local health authority.

**SO ORDERED.**

Date: 7/15/2020

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel